**SIGNED this 14th day of March, 2014**

Marcia Phillips Parsons
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | |
| FRED M. LEONARD, JR., | No. 12-51821 |
| Debtor. | Chapter 7 |
| RDLG, LLC, | |
| Plaintiff, | |
| vs. | Adv. Pro. No. 13-5002 |
| FRED M. LEONARD, JR., | |
| Defendant. | |

### M E M O R A N D U M

<small>APPEARANCES:</small>

| Ross R. Fulton, Esq. | David J. Fulton, Esq. | Jonathan R. Bunn, Esq. |
|---|---|---|
| Rayburn Cooper & Durham, P.A. | Scarborough, Fulton & Glass | Law Offices of Jonathan R. Bunn |
| 227 W. Trade Street, Suite 1200 | 701 Market Street, Suite 1000 | 414 Wilson Avenue, Suite 101 |
| Charlotte, North Carolina 28202 | Chattanooga, Tennessee 37402 | Tullahoma, Tennessee 37388 |
| *Attorney for Plaintiff* | *Attorney for Plaintiff* | *Attorney for Defendant* |

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge.**  In this adversary proceeding, the plaintiff RDLG, LLC seeks a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6) against the debtor Fred M. Leonard Jr.  Presently before the court is RDLG's motion for partial summary judgment as to its § 523(a)(2)(A) claim,[1] and Leonard's motion as to all nondischargeability counts.  In its motion, RDLG asserts that the default judgment entered in a pending federal district court action against Leonard collaterally estops him from relitigating the fraud issues in this nondischargeability proceeding.  In response, Leonard argues that the judgment is void because it was entered post-petition, in violation of the automatic stay, and alternatively, that the necessary elements of collateral estoppel are not present.  In his summary judgment motion, Leonard asserts that the complaint in this adversary proceeding fails to set forth sufficient facts to support findings of nondischargeability under § 523(a)(2)(A), (a)(4), and (a)(6), and that the undisputed material facts in this case establish that he is entitled to a judgment in his favor.  As discussed hereafter, because the court concludes that the default judgment which was entered as a Federal Rule of Civil Procedure 16(f) sanction against Leonard was not subject to the automatic stay and that collateral estoppel otherwise applies, RDLG's motion for partial summary judgment as to § 523(a)(2)(A) will be granted, and Leonard's motion as to this count will be denied.  Additionally, Leonard's summary judgment motion will be granted as to RDLG's § 523(a)(4) claim and denied as to its § 523(a)(6) claim.  This is a core proceeding.  *See* 28 U.S.C. § 157(b)(2)(I).

I.

On September 17, 2010, RDLG filed suit in the United States District Court for the Western District of North Carolina against Leonard, four other individuals, and two limited liability

---

[1] In its brief in support of its summary judgment motion, RDLG requests that the court "enter partial summary judgment against Leonard as to liability on the Fourth, Sixth, and Seventh Claims for Relief, and in so doing, grant summary judgment in favor of RDLG on the denial of dischargeability claim asserted in the First Claim for Relief."  The referenced first, fourth, sixth, and seventh claims for relief in the complaint are § 523(a)(2)(A) of the Bankruptcy Code and state law claims of fraud, fraudulent inducement of contract, and unfair trade practices respectively.  As discussed in the body of this memorandum opinion, RDLG already has a judgment against Leonard as to the asserted state law claims.  Moreover, RDLG's brief is limited to the question of whether that judgment should be given collateral estoppel effect on its § 523(a)(2)(A) claim in this court.

companies allegedly controlled and owned in part by Leonard, RPM Group, LLC and its affiliated brokerage, RPM Group Brokerage, LLC (the LLCs collectively "RPM"). The parties' dispute pertained to a multiple acreage development in McDowell County, North Carolina owned by RDLG (the "Property"). RDLG alleged in the complaint that RPM and its representatives, including Leonard, fraudulently induced RDLG to enter into a marketing agreement with RPM to market the Property and conduct a Sale Event by numerous misrepresentations regarding RPM's prior land marketing experience, its capabilities, and the achievable sale price of Property lots. RDLG alleged in the suit that it was damaged by the fraud, sought recision of the agreement, and asserted claims for fraudulent misrepresentation, negligent misrepresentation, civil conspiracy, and unfair trade practices under North Carolina law.

The defendants in that action filed an answer and an amended answer, largely denying the allegations in the complaint and asserting affirmative defenses. After the commencement of discovery, a failed mediated settlement conference and more discovery, the parties consented to having the dispute resolved by a United States Magistrate Judge, who scheduled trial for October 15, 2012. Approximately six weeks before the scheduled trial date, the court on September 6, 2012, entered a pretrial order directing the parties to appear at a pretrial conference on October 3, 2012, and to comply with certain other requirements including the exchange of exhibits, the submission of proposed jury instructions, and the filing of pretrial briefs. The pretrial order warned that the failure to comply with the court's directives could result in the imposition of sanctions.

On September 30, 2012, two business days before the scheduled October 3, 2012 pretrial conference, the attorneys representing Leonard and RPM, Terri Lankford and Seth Neyhart, filed motions to withdraw as counsel and postpone the pretrial conference "so that Defendants can initiate bankruptcy proceedings." As further cause for the motions, counsel stated that their communication with their clients had ceased a month earlier and Lankford represented that she was scheduled to be out of the country on the date of the pretrial conference.[2]

---

[2] The stated grounds for the motions to withdraw and to continue the pretrial conference were set forth in the district court's October 1, 2012 order denying the motions. Copies of the motions have not been tendered.

The court denied the motions to withdraw and postpone the pretrial conference in an order entered October 1, 2012. The court opined that the last-minute motions were designed to delay the trial and warned that the failure of either Lankford or Neyhart to appear at the pretrial conference would result in the court finding counsel in contempt. The next day Lankford filed a declaration advising that she was already out of the country when she received notice of the court's October 1 order, and that it would be impossible for her to be physically present at the pretrial conference. In apparent response to the court's criticism regarding the timing of the motions, Lankford stated in a sworn declaration, inter alia, that:

> On September 4, 2012, . . . Defendant Fred Leonard stated that he would be filing bankruptcy personally and on behalf of both corporations.
>
> . . . .
>
> Defendant Leonard agreed that it was unnecessary for me to continue to represent him as he had new representation whom [sic] were going to enter a notice of appearance with this Court.
>
> . . . .
>
> Defendant Leonard then specifically asked me to not inform the Court until September 28, 2012, because he and his other attorney's [sic] believed that it would severely prejudice him in the resolution of other legal matters, including but not limited to, the execution of a refinance on Defendant's home, the sale of that home, the negotiation of federal tax liens, the settlement negotiation of another litigation matter, the execution of current and pending business deals, and the resolution of an investment conflict.
>
> . . . .
>
> I informed Defendant multiple times during the month of September that I needed to file the Motion to Withdraw and was told that I needed to wait until Defendants' bankruptcy was filed which I was assured would be before the end of the month.

On October 3, 2012, the district court held the pretrial conference as scheduled. Attorney Seth Neyhart appeared at the conference on behalf of Leonard and RPM, as did Leonard personally. Ms. Lankford did not attend. At the conclusion of the pretrial conference, counsel for RDLG orally moved for entry of sanctions pursuant to Federal Rule of Civil Procedure 16(f).

Two days later, on October 5, 2012, the court entered an order addressing RDLG's oral motion and stating that it was considering the conduct of defendants Leonard and RPM and their counsel *sua sponte*. The court stated in the order that attorney Neyhart had been "wholly unprepared

for the pretrial conference and had no knowledge of the case," resulting in the pretrial conference being "largely a waste of time and resources." The court further found that Leonard and RPM had failed to produce an exhibit list as previously ordered and that although the defendants had filed a trial brief and jury instructions, both documents had been largely copied from documents filed by RDLG. Based on these deficiencies, as well as the failure of Ms. Lankford to attend the pretrial conference as ordered, the district court concluded that sanctions under Rule 16(f) were warranted against Leonard and RPM and their counsel. The court ordered Leonard, Lankford and Neyhart to pay RDLG's attorney fees in preparing for and attending the pretrial conference, and ordered Leonard and RPM to pay $2,500 each as sanctions pursuant to Rule 16(f)(1)(C) for the conduct of their counsel. The court also sanctioned Lankford $5,000 pursuant to Rule 16(f)(1)(A) and (C) and Neyhart $2,500 pursuant to Rule 16(f)(1)(B) and (C). The court directed that the specified sums be paid to the clerk of the court within five days of the order, and advised that the failure to timely comply "will result in the Court striking the answer of Defendants and entering default judgment against Defendants and/or the instigation of contempt proceedings against counsel."[3]

In addition to the referenced Rule 16(f) basis for sanctions, the court also stated in the October 5, 2012 order that sanctions were being imposed pursuant to the inherent power of the court to sanction conduct that constituted an abuse of the judicial process. The court concluded that Leonard and RPM and their counsel had filed the motions to withdraw and to continue the pretrial conference in bad faith, as a means of delaying the case, and to prevent the trial from going forward. According to the court, "[s]uch conduct by both Defendants and their counsel constitutes an assault on the integrity of this court" and "made a mockery of the judicial process. Such abuses of the judicial process must be sanctioned in order to protect the integrity of the federal court system." The court again warned Leonard and RPM "that any future dilatory conduct <u>will</u> result in the Court striking their Answers and entering default judgment against them." Lastly, the court observed that additional sanctions against attorneys Lankford and Neyhart pursuant to Federal Rule of Civil Procedure 11 may be required, and directed counsel to appear before the court for a hearing on

---

[3] The docket sheet for the district court action indicates that RDLG filed stipulations of dismissal against all defendants other than Leonard and the RPM defendants on October 2, 2012, and October 8, 2012.

October 11, 2012, to show cause why they should not be further sanctioned under Rule 11.

On October 10, 2012, the day that payment of the monetary sanctions was due, Leonard filed a petition for bankruptcy relief under chapter 7 in this court; Leonard did not pay the sanctions. That same day, RDLG filed a suggestion of bankruptcy with the district court, informing it of Leonard's personal bankruptcy filing.

The next day the previously scheduled show cause hearing regarding attorneys Lankford and Neyhart was held. No transcript of that hearing has been submitted, but subsequently the court entered an order on October 24, 2012, stating that Rule 11 sanctions against attorneys Lankford and Neyhart were not warranted. The court concluded, however, that further sanctions were warranted against Leonard and RPM under both Rule 16 and the inherent power of the court, referencing an oral ruling that it had apparently made on the subject at the show cause hearing. As set forth in the October 24 order, the court noted Leonard's and RPM's failure to pay the ordered monetary sanctions and the court's prior warning that the failure would result in a default judgment:

> Moreover, as the Court stated on the record during the hearing, Defendants have plotted and schemed to delay and undermine the trial in this matter. Defendants manipulated counsel into believing that all three Defendants would take bankruptcy in this matter prior to the Pretrial Conference in this case when, in fact, only one Defendant took bankruptcy and did so after the Pretrial Conference and on the eve of trial. In addition, Defendants undermined counsel's ability to prepare for the Pretrial Conference and for the trial.

> Based on the Defendants' continued failure to comply with the orders of this court and their conduct in undermining these proceedings, and for the reasons stated by the court at the hearing, the court finds that the entry of default judgment against Defendants is warranted in this case. The court finds that the Defendants have acted in bad faith throughout these proceedings to the prejudice of Plaintiff, the judicial process, and the administration of justice. Defendants have repeatedly attempted to delay these proceedings and have shown complete disregard for the judicial system and this court. Moreover, it is the conduct of the Defendants that is the most culpable in this case. This is not a case where the court is sanctioning a blameless client solely for the conduct of his or her attorney.

> It is also clear to the court that less drastic sanctions would be of no avail in this matter. . . . The only effective sanction remaining against Defendants is to strike their answer and enter default judgment against them. The entry of default judgment is necessary to punish Defendants for their conduct in this case and to deter

6

> conduct like this in the future, both from Defendants and others. Finally, the Court
> finds that such a sanction is necessary to protect the public interest in maintaining the
> integrity of the judicial system and preventing a party to a civil lawsuit from
> undermining the judicial system and the power of the Court.

The court directed the clerk of court to strike defendants' answer and enter default judgment against Leonard and RPM on the issue of liability. As to the amount of damages, the court stayed the issue against Leonard individually pending the termination of his bankruptcy case, but entered joint and several judgment against the RPM defendants in the amount of $257,500, based on the parties' stipulated damages agreement.

As noted, on October 10, 2012, Leonard commenced this bankruptcy case. On January 11, 2013, RDLG initiated this adversary proceeding, seeking damages for its state law claims and determinations of nondischargeability. Surprisingly, the complaint did not reference the default judgment entered by the district court. In fact, neither party mentioned the prior default judgment until RDLG filed its present motion for summary judgment on November 27, 2013, citing the judgment as its basis for the motion. In its Statement of Undisputed Material Facts, RDLG sets forth the procedural history of the district court action which is largely undisputed by Leonard. RDLG has also submitted for consideration authenticated copies of the pertinent pleadings and judgment along with other filings made in the district court action, case no. 3:10-cv-461 in United States District Court for the Western District of North Carolina, and the October 5 and 24, 2012 sanction orders entered by that court. In opposition to the motion, Leonard has tendered a copy of the docket sheet in the district court action along with authenticated copies of other filings in that action and his personal affidavit.

After the deadline for filing dispositive motions was extended, Leonard filed its own summary judgment motion on January 29, 2014, supported by his own Statement of Undisputed Material Facts. On February 19, 2014, RDLG filed a response in opposition to Leonard's motion. Leonard filed a reply to the response on March 3, 2014.

The court will address first RDLG's summary judgment motion in which it makes three primary arguments. First, RDLG asserts that the district court's October 24, 2012 sanction order was not subject to the automatic stay of 11 U.S.C. § 362(a). Second, RDLG contends that Leonard

is collateral estopped from relitigating the fraud issue decided in the district court action. Lastly, RDLG maintains that the default judgment establishes the requirements for nondischargeability under 11 U.S.C. § 523(a)(2)(A). In response, Leonard asserts that the default judgment is void since it was entered after his bankruptcy filing in violation of the automatic stay. Alternatively, even if not void, Leonard argues that the necessary elements for collateral estoppel are not present.

II.

Federal Rule of Civil Procedure 56(a)[4] provides that "[a] party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought" and that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The initial burden to demonstrate the absence of a genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Upon making this showing, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986). Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In the alternative, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).[5]

---

[4] Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 for adversary proceedings.

[5] While Rule 56(c)(1) "addresses the ways to support an assertion that a fact can or cannot be genuinely disputed[,] [i]t does not address the form for providing the required support." Fed. R. Civ. P. 56(c)(1) (2010 advisory committee notes). As to form, Rule 7056-1 of this court's local rules works in tandem with Rule 56(c) by requiring that every motion for summary judgment "be
(continued...)

When deciding a motion for summary judgment, the court may not weigh the evidence to determine the truth of the matter asserted but must simply determine whether a genuine dispute for trial exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). The facts and all resulting inferences are to be viewed in a light most favorable to the nonmovant, and the court must decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553, 119 S. Ct. 1545 (1999)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

## III.

The first argument made by RDLG in its motion for summary judgment is that the post-petition sanctions order entered by the district court was not subject to the automatic stay imposed by 11 U.S.C. § 362(a). In this regard, RDLG correctly observes that the district court had jurisdiction to determine whether the proceeding before it was subject to the automatic stay. *See NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986) (quoting *In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir. 1985) ("The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic

---

[5](...continued)
accompanied by a statement of material facts which the movant contends are undisputed . . . [,] supported by specific citation to material allowed by Fed. R. Civ. P. 56(c) that establishes the fact." *See* E.D. Tenn. LBR 7056-1(a). The nonmovant must respond to the movant's statement by "(1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of summary judgment only; or (3) stating that the fact is disputed as demonstrated by specific citation to material allowed by Fed. R. Civ. P. 56(c)." E.D. Tenn. LBR 7056-1(b). A respondent may also file "a statement of additional material facts that the respondent contends are undisputed and require the denial of the motion," which statement must be supported by and responded to in the same manner as the original statement. E.D. Tenn. LBR 7056-1(c).

stay.")).   The Sixth Circuit has noted, however, that a non-bankruptcy forum makes this determination at its peril.   "If the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void *ab initio*."   *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 384 (6th Cir. 2001).   In other words, the bankruptcy court's conclusion regarding the applicability of the automatic stay is determinative.

From the record, there is no indication that the district court made any express ruling as to the automatic stay.   As noted, the transcript of the October 11, 2012 hearing has not been tendered and the October 24, 2012 order did not mention the automatic stay.   Nonetheless, it is clear that the court was aware of Leonard's bankruptcy filing.   The court referenced in the order that Leonard had sought bankruptcy relief after the pretrial conference held on October 3, 2012, and stayed the issue of the amount of the damages until Leonard's bankruptcy case was completed.   In light of these references, this court can only assume that the district court implicitly concluded that the automatic stay did not preclude it from going forward with the actions that it took.[6]

RDLG argues that the district court's actions were excepted from the automatic stay because they were contempt proceedings.   Although there is no specific statutory exception to the automatic stay for contempt actions, the Sixth Circuit Court of Appeals has held that the automatic stay in a debtor's bankruptcy case did not preclude entry of an order finding him in contempt in a pending action.   *See Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757(6th Cir. 2012).

In *Dominic's Restaurant*, the plaintiff had sued for trademark infringement and trademark dilution under federal law, as well as state law claims of unfair trade practices and fraud.   After a number of contempt rulings against the defendants for violations of temporary restraining orders and preliminary injunctions, the plaintiffs moved for default judgment based on the defendants' failure

---

[6] This conclusion is further supported by the fact that another defendant in the district court action, Dexter Hubbard, had filed a suggestion of bankruptcy earlier in the case on June 12, 2012. In response to that filing, the court directed the parties to show cause in writing whether the case was subject to the automatic stay under 11 U.S.C. § 362.   In an order entered August 22, 2012, the district court noted that the parties had agreed that claims against Hubbard were subject to the automatic stay, but that the stay did not impact the remaining defendants.   Thus, the court was aware of the automatic stay and its implications.

to comply with discovery deadlines, identify witnesses, and participate in a mandatory conference. *Id.* at 759.   The federal district court originally denied the motion but later issued a show cause order as to why a default judgment should not be entered, with the plaintiffs correspondingly filing a fourth motion for contempt.  After one individual defendant filed a suggestion of bankruptcy based on his chapter 13 filing, the district court nonetheless granted default judgment against him and the other defendants, rejecting his claim that the proceedings were automatically stayed by his bankruptcy filing although recognizing that the stay would bar an assessment of damages.  The court also granted the plaintiffs' renewed motion for contempt notwithstanding the bankruptcy filing. *Id.* at 760.

Upon appeal, the debtor framed the issue as whether "the automatic bankruptcy stay should preclude further proceedings in contempt that are civil in nature." *Id.*  The Sixth Circuit answered the question in the negative and affirmed the district court, concluding that the determination of the plaintiffs' contempt motion was not stayed by the defendant's bankruptcy filing.  *Id.* at 760-61. As stated by the court of appeals:

> As a general rule, the filing of a bankruptcy petition operates to stay, among other things, the continuation of a judicial proceeding against the debtor that was commenced before the petition. . . . But the automatic stay protection does not apply in all cases; there are statutory exemptions, and there are non-statutory exceptions.

*Id.* at 760 (citations omitted).  The court then concluded that judicial proceedings against the debtor for contempt fell with this latter category of non-statutory exceptions.  According to the court:

> It is within a court's inherent power to take whatever steps are necessary to ensure those persons within its power comply with its orders. We cannot conceive that Congress intended to strip a court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless.

*Id.* at 761 (quoting *In re Rook*, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989)). *See also In re Morgan*, 109 B.R. 297 (Bankr. W.D.  Tenn. 1989) (a contempt order issued to uphold the dignity of the court is not violative of the automatic stay).

In the case at hand, the district court did not use the word "contempt" to describe its actions. As set forth in that court's October 5, 2012 order, the issue of sanctions against Leonard and RPM was before the court on the oral motion of RDLG pursuant to Federal Rule of Civil Procedure 16(f)

made at the pretrial conference, and the court's *sua sponte* consideration of sanctions "based on the conduct of Defendants and their counsel at the conference." The court then imposed monetary sanctions against Leonard under both Rule 16(f) and the court's inherent power "to sanction conduct that constitutes an abuse of the judicial process," citing, inter alia, *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 542 (4th Cir. 2002) (noting that dismissal other than on the merits must be supported by a finding of bad faith or other similar abuse, after the court's consideration of numerous other factors, including the effectiveness of lesser sanctions). Similarly, in the second sanctions order entered October 24, 2012 after Leonard's bankruptcy filing, the court again cited its inherent power and Rule 16 without any characterization of its actions as contempt.[7] *See* Fed. R. Civ. P. 16(f)(1) (incorporating sanctions available under Rule 37(b)(2)(A)(ii)-(vii)). In the first sanction order, the court did make one mention of contempt, noting that the failure of the defendants or counsel to comply with the order within the specified time frame would "result in the Court striking the answer of Defendants and entering default judgment against Defendants and/or the instigation of contempt proceedings against counsel." Nonetheless, there is no indication that the court went the contempt route, choosing instead to rely on the more immediate sanction options provided for in Rule 16(f)'s incorporation of Rule 37(b)(2)(A).[8]

---

[7] The inclusion of sanctions in Rule 16(f) was, in part, an attempt to eliminate the need for a court to depend on its inherent power to regulate litigation. *See* Fed. R. Civ. P. 16 (1983 advisory committee notes) ("[T]o obviate dependence upon Rule 41(b) or the court's inherent power to regulate litigation . . . Rule 16(f) expressly provides for imposing sanctions on disobedient or recalcitrant parties, their attorneys, or both . . . ."); 6A Charles Alan Wright & Arthur P. Miller, *Federal Practice and Procedure* § 1531 (3d ed. 2014) ("Although courts had used their inherent power to impose sanctions under the original rule [16], the amended rule now contains explicit authority for doing so and thus 'reinforces the rule's intention to encourage forceful judicial management.'").

[8] Rule 16(f) of the Federal Rules of Civil Procedure is entitled "Sanctions" and provides:

(1) In General. On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
> (A) fails to appear at a scheduling or other pretrial conference;
> (B) is substantially unprepared to participate–or does not participate in good faith–in the conference; or
> (C) fails to obey a scheduling or other pretrial order.

(continued...)

Consequently, the court assumes that the district court did not hold Leonard in contempt but instead sanctioned him pursuant to specific authority provided by the federal rules and the court's inherent power. Are such actions excepted from the automatic stay? The courts that have considered this issue have concluded "yes." Indeed, a number of courts, including at least two federal circuit courts, have recognized a statutory exception to the automatic stay under 11 U.S.C. § 362(b)(4) for post-petition sanctions imposed under various federal rules. *See Berg v. Good Samaritan Hosp.*, 230 F.3d 1165, 1168 (9th Cir. 2000) (concluding that Federal Rule of Appellate Procedure 38 sanctions imposed post-petition were excepted from the automatic stay pursuant to § 362(b)(4)); *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993) (concluding that post-petition Rule 11 sanctions were excepted from the automatic stay by § 362(b)(4)); *Sabre Grp., Inc. v. European Am. Travel, Inc.*, 192 F.3d 126, at *2 (5th Cir. Aug. 9, 1999) (concluding that post-petition Rule 16(f) sanctions were excepted from the automatic stay under § 362(b)(4); *Maritan v. Todd,* 203 B.R. 740 (N. D. Ok. 1996) (pursuant to § 362(b)(4), bankruptcy filing did not stay appeal of Rule 11 sanction); *O'Brien v. Fischel*, 74 B.R. 546, 550 (D. Haw. 1987) (Rule 11 sanctions not stayed by chapter 13 filing); *Petrano v. Nationwide Mutual Fire Ins. Co.*, 2013 WL 811876 (N.D. Fl. Mar. 4, 2013) (motions for Rule 11 sanctions excepted from automatic stay under § 362(b)(4)); *In re Betts*, 165 B.R. 233, 241 (Bankr. N.D. Ill. 1994) (show cause order issued by state court in estate probate proceeding excepted under § 362(b)(4)); *In re Miller*, 2011 WL 6736070 (Bankr. D. Colo. Dec. 20, 2011) (motion in federal district court for sanctions under Rule 11 and 28 U.S.C. § 1927 excepted from operation of the automatic stay by § 362(b)(4)); *Janis v. Janis*, 684 N.Y.S.2d 426 (N.Y. Sup.

---

[8](...continued)

(2) Imposing Fees and Costs. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses–including attorney's fees–incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f).

In turn, Rule 37(b)(2)(A)(ii)-(vii) provides sanctions for not obeying a discovery order that include striking pleadings in whole or in part, rendering a default judgment against the disobedient part, and treating as contempt of court the failure to obey any order except an order to submit to an examination.

1998) (proceeding by state administrative law judge to impose sanctions for prosecuting frivolous action was excepted under § 362(b)(4) from the automatic stay).

Section 362(b)(4) of the Bankruptcy Code provides an exception to the automatic stay for "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment . . . ." 11 U.S.C. § 362(b)(4). As articulated by the Sixth Circuit in a different context, "[b]y this provision, Congress declared that the policy set forth in the Bankruptcy Code's automatic stay provision yields to state and federal governmental interest in securing compliance with certain aspects of those authorities' respective regulatory and police powers." *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d at 385 (citing *Midlantic Nat'l Bank v. New Jersey Dept. Of Envtl. Prot.*, 474 U.S. 494, 502, 106 S. Ct. 755 (1986)).

The Sixth Circuit has applied two tests to determine whether a proceeding brought by a governmental entity falls within this police power exception: the pecuniary purpose test and the public policy test. *Id.*

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

*Id.* at 385-86 (quoting *Word v. Commerce Oil Co. (In re Commerce Oil Co.)*, 847 F.2d 291, 295 (6th Cir. 1988)). Under "these complementary tests, an action will only be exempt from the automatic stay of the Bankruptcy Code if the action has been instituted to effectuate the public policy goals of the governmental entity, as opposed to actions instituted to protect the entity's pecuniary interest in the debtor's property or to adjudicate private rights." *Id.* at 386.

The Ninth Circuit Court of Appeals utilized these same tests in concluding that a proceeding to impose sanctions under Rule 38 of the Federal Rules of Appellate Procedure for prosecuting a frivolous appeal fell under the government regulatory power exception of § 362(b)(4). *See In re Berg*, 230 F.3d at 1168. As stated by the court, "[w]e do so because it is clear that the purpose of

14

such sanction is to effectuate public policy, not to protect private rights or the government's interest in the sanctioned person's property." *Id.* The appellate court rejected the argument that because the sanctions would inure to the benefit of a private party, § 362(b)(4) was inapplicable. The court observed that although private parties may benefit financially from ordered sanctions, "the deterrent effect of monetary penalties can be essential for the government to protect its regulatory interests." *Id.* (citing *O'Brien v. Fischel*, 74 B.R. at 550); *E.E.O.C. v. Rath Packing Co.*, 37 B.R. 614 (S.D. Iowa 1984)). *See also Maritan v. Todd*, 203 B.R. at 744 (stating that there was no need to apply the public policy test to determine whether an appeal of Rule 11 sanctions was excepted under § 362(b)(4) from the automatic stay, but noting that the public policy test would be satisfied); *O'Brien v. Fischel*, 74 B.R. at 549-51 (applying pecuniary purpose test, federal district court concluded that hearing on Rule 11 sanctions was not stayed by respondent's bankruptcy filing due to § 362(b)(4) exception: "imposition of sanctions under Rule 11 is a direct application of the district court's regulatory powers, which serve to protect the general public from needless, harassing, and abusive litigation"); *Janis v. Janis*, 684 N.Y.S.2d at 430-432 (state court utilized the public policy and pecuniary interest tests espoused by the Sixth and Ninth Circuits in concluding that state court sanction proceeding fell within the scope of  § 362(b)(4)).

The Seventh Circuit Court of Appeals in *Alpern v. Lieb* did not specifically reference the pecuniary purpose and public policy tests in holding that a proceeding to impose sanctions under Rule 11 was excepted under § 362(b)(4) from the automatic stay. *See Alpern v. Lieb*, 11 F.3d at 689. Looking to the plain language of the exception, the court reasoned that a Rule 11 sanction is meted out by a governmental unit – the court – and that the federal judiciary promulgated Rule 11 in order to punish unprofessional behavior rather than merely shifting fees. *Id.* Like the Ninth Circuit in *Berg*, the Seventh Circuit was undeterred by the fact that the sanctions were entirely pecuniary, concluding that this characteristic did not take the proceeding out of the § 362(b)(4) exception. *Id.* (citing *United States v. Commonwealth Cos. (In re Commonwealth Cos.)*, 913 F.2d 518, 522-23 (8th Cir. 1990) (rejecting the assertion that the government is seeking to protect some pecuniary interest in the assessed penalties merely because it regulates private conduct by establishing monetary penalties for certain rule violations)). Lastly, like the Sixth Circuit in *Dominic's Restaurant*, the Seventh Circuit was concerned that a litigant would seek bankruptcy protection in order to avoid

sanctions. *Id.* at 690.  As stated by the court, "[a] litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy.  Allowing him to do so would not only increase the number of bankruptcy filings but also create incentives for unprofessional conduct in litigation by firms or individuals teetering on the edge of the bankruptcy abyss." *Id.*

After careful consideration, this court is of the opinion that the action of the district court in assessing sanctions against Leonard was excepted from the automatic stay, either as an non-statutory exception as recognized in *Dominic's Restaurant*, or § 362(b)(4).  In this regard, it is abundantly clear that the purpose of the imposed sanctions was to protect the integrity of the court and the judicial process by punishing Leonard rather than to adjudicate the parties' dispute. The court's October 24, 2012 order is replete with strong language critical of Leonard and RPM.  Specifically, the court found that the defendants "plotted and schemed to delay and undermine the trial," "manipulated counsel," and "undermined counsel's ability to prepare for the Pretrial Conference and for trial." The court further found that the defendants had "acted in bad faith throughout the[] proceedings to the prejudice of [RDLG], the judicial process, and the administration of justice," that the defendants had "repeatedly attempted to delay the[] proceedings," and that they had "shown complete disregard for the judicial process and [the court]."  It was on the basis of these findings, along with "the Defendants' continued failure to comply with the orders of [the] court and their conduct in undermining [the] proceedings," that the court entered default judgment, concluding that "less drastic sanctions would be of no avail."  Moreover, the court reasoned that default judgment was necessary "to punish Defendants for their conduct in this case," "to deter conduct like this in the future," and "to protect the public interest in maintaining the integrity of the judicial system and preventing a party to a civil lawsuit from undermining the judicial system and the power of the court." Undeniably, the court's focus was on effectuating public policy rather than adjudicating private rights; its language could not have been clearer. *Cf. Chao v. Hospital Staffing Services, Inc.*, 270 F. 3d at 390 ("[W]hen the action incidentally serves public interests but more substantially adjudicates private rights, courts should regard the suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-a-vis other creditors of the estate, contrary to the Bankruptcy Code's priorities.").  This

16

conclusion is reinforced by the fact that the court raised the sanctions issue *sua sponte*, believing that independent action by the court was called for to police the conduct of the defendants and to protect the integrity of the court and of the judicial process.

This court notes that only one of the decisions applying § 362(b)(4) in this context specifically addressed the fact that the exception is limited to an action or proceeding by a "governmental unit." As noted, the Seventh Circuit stated without discussion in *Alpern v. Lieb* that a court is a governmental unit. *Alpern v. Lieb*, 11 F.3d at 689. Governmental Unit is a defined term in the Bankruptcy Code, meaning "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27). The legislative history to § 101(27) indicates that the term "governmental unit is to be construed in its broadest sense and that the key to the determination is whether the department, agency or instrumentality is carrying out a governmental function." *In re Arsi*, 354 B.R. 770, 773 (D.S.C. 2006) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 311 (1977) U.S. Code Cong. & Admin News 1978, p. 6268) (concluding that the South Carolina Supreme Court and its Office of Disciplinary Counsel are governmental units for purposes of § 101(27) and § 362(b)(4)); *see also In re Miller*, 397 F.3d 726, 730 (9th Cir. 2005) (bankruptcy courts are governmental units within the meaning of § 101(27)); *In re Wade*, 948 F.2d 1122, 1124 (9th Cir. 1991) (the State Bar of Arizona is an instrumentality of the Arizona Supreme Court within the meaning of § 362(b)(4)).

Construing the term "governmental unit" in its broadest sense, this court concludes that the federal district court that sanctioned Leonard was either the United States or an instrumentality of the United States within the meaning of § 101(27) because the court was carrying out a governmental function in taking the actions that it took: sanctioning Leonard for acting in bad faith in connection with the federal lawsuit in which he was a defendant. Moreover, that court's *sua sponte* consideration of whether sanctions should be imposed against Leonard was "an action or proceeding *by a governmental unit* . . . to enforce such governmental unit's . . . police and regulatory power" within the language of § 362(b)(4). Accordingly, this court concludes that the district

17

court's actions fell within this statutory exception to the automatic stay.  Consequently, the court's entry of default judgment against Leonard did not violate the automatic stay of 11 U.S.C. § 362(a).

IV.

The court turns to the next issue in this case: whether entry of the default judgment collaterally estops Leonard from relitigating the fraud issues in this nondischargeability proceeding. The doctrine of collateral estoppel is applicable in dischargeability proceedings.  *See Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S. Ct. 654 (1991).  As explained by the Sixth Circuit Court of Appeals, "[t]hat Congress intended the bankruptcy court to determine the final result dischargeability or not does not require the bankruptcy court to redetermine all the underlying facts."  *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981).

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161 (2008).  And the federal rule regarding the preclusive effect of federal judgments in diversity cases is that the issue preclusion law of the state in which the federal court sits is to be generally applied, unless there is a countervailing federal interest.  *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09, 121 S. Ct. 1021 (2001). "If, for example, state law [does] not accord claim-preclusive effect to dismissals for willful violation of discovery orders, federal courts' interest in the integrity of their own processes might justify a contrary federal rule."  *Id.*

Generally speaking, the standards for collateral estoppel under both federal common law and North Carolina law are similar.  *See United States v. Town of Garner*, 720 F. Supp.2d 721,731 n.4 (E.D.N.C. 2010).  Under North Carolina law, collateral estoppel applies when (1) the issues to be concluded are the same as those involved in the prior action; (2) the issues were raised and actually litigated in the prior action; (3) the issues were material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action were necessary and essential to the resulting judgment.  *See Urquhart v. E. Carolina Sch. of Med.*, 712 S.E.2d 200, 204 (N.C. App. 2011) .  Similarly, the Sixth Circuit has explained that the doctrine of collateral estoppel is applicable "when: (1) the issue in the subsequent litigation is identical to that resolved in the

18

earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue." *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir. 2005).  Although a comparison of the two standards suggest that the last component of the federal standard is not present in the North Carolina list, the North Carolina Supreme Court has recognized that implicit in its collateral estoppel doctrine is the requirement that the party to be estopped had a full and fair opportunity to litigate the issue.  *See Thomas M. McInnis & Assocs., Inc. v. Hall*, 349 S.E.2d 552, 559-60 (N.C.1986).  Moreover, although the federal standard does not expressly include North Carolina's requirement that the issue in the prior action be material and relevant, these considerations appear to be included in the federal standard that the issues be "necessary and essential."

Applying these collateral estoppel requirements to the case at hand, the first question is whether the nondischargeability issue to be resolved in this proceeding is the same as the issue determined in the district court action. According to RDLG, the fraudulent misrepresentation claim that it prevailed upon in the district court action satisfies the requirements of § 523(a)(2)(A) in this court. To ascertain whether RDLG is correct on this point, this court must compare the elements of a fraudulent misrepresentation claim under North Carolina law and determine whether they match the components of § 523(a)(2)(A) of the Bankruptcy Code.

Under this provision, "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).  The Sixth Circuit has held that in order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: "(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss."  *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998) (citing

19

*Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993)).

In comparison, the essential elements of a common law fraud or fraudulent misrepresentation claim under North Carolina state law are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. Additionally, any reliance on the allegedly false representation must be reasonable." *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) (internal citations omitted). The only noticeable difference between these elements and the requirements for fraud under § 523(a)(2)(A) is that the former requires reasonable reliance while the latter references justifiable reliance. It is well established, however, that a finding of reasonable reliance includes the lesser standard of justifiable reliance. *See, e.g., Willens v. Bones (In re Bones)*, 395 B.R. 407 (Bankr. E.D. Mich. 2008). Accordingly, the elements for fraud under North Carolina law are for all practical purposes identical to the elements for nondischargeability under § 523(a)(2)(A).

Notwithstanding the virtual identicalness of state law fraud and bankruptcy fraud issues, Leonard argues that the district court judgment for fraudulent misrepresentation did not establish the required elements for nondischargeability under § 523(a)(2)(A) because there is no allegation in that complaint that Leonard personally received anything of value from RDLG. Thus, argues Leonard, it can not be said that he "obtained money through a material misrepresentation," as set forth in the first *Rembert* element. Leonard also adds in his personal affidavit that neither he, RPM, nor any officer or employee of RPM made a single penny as a result of the marketing agreement between RDLG and RPM, and that to the contrary both he and RPM lost a great deal of money on the transaction. Leonard also tenders evidence that indicates that RPM immediately forwarded the $40,000 that it had received from RDLG to a third party for marketing expenses that benefitted RDLG.

Leonard's legal argument on this issue is incorrect and his assertions as to the absence of a profit are irrelevant. As to the legal issue, the Sixth Circuit Court of Appeals has rejected the proposition that "a debt is nondischargeable under section 523(a)(2)(A) only when the creditor proves that the debtor directly and personally received every dollar lost by the creditor." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172 (6th Cir .1996). Under the "benefits theory" of §

20

523(a)(2)(A) liability, a debtor may be liable even when he has only indirectly obtained some tangible or intangible financial benefit as a result of his misrepresentation.  *See Ash v. Hahn (In re Hahn)*, No. 11–3146, 2012 WL 392867, at \*4 (Bankr. N.D. Ohio Feb. 6, 2012) (citing *In re Brady*). Thus, as found in *Brady*, a debtor who fraudulently induces a loan to a corporation that he controls or has a sufficient identity with may be liable for purposes of § 523(a)(2)(A).  *See In re Brady*, 101 F.3d at 1172 (discussing *Ashley v. Church (In re Ashley)*, 903 F.2d 599, 604 (9th Cir. 1990), and citing *Bates v. Winfree (In re Winfree)*, 34 B.R. 879, 883 (Bankr. M.D. Tenn. 1983) (shareholder, officer and director of corporation who fraudulently induces a loan to the corporation obtains a benefit under § 523(a)(2)(A)).

More importantly, the Supreme Court held in *Cohen v. De La Cruz*, 523 U.S. 213, 118 S. Ct. 1212 (1998), that § 523(a)(2)(A) is not limited to the value of the money or services obtained by the debtor through fraud.  Rather, this Code section prevents the discharge of all liability arising from the fraud.  *Id.* at 218 ("Once it is established that specific money or property has been obtained by fraud, . . . 'any debt' arising therefrom is excepted from discharge.").  In recognition of this ruling, various courts of appeals addressing the issue have concluded that receipt of a benefit is no longer an element of fraud under § 523(a)(2)(A).  *See Muegler v. Bening*, 413 F.3d 980, 984 (9th Cir. 2005) ("It is only the fact of an adverse fraud judgment, and nothing more, that is required for a debt to be nondischargeable."); *Deodati v. M.M. Winkler & Assocs. (In re M.M. Winkler & Assocs.)*, 239 F.3d 746, 749 (5th Cir. 2001) ("The language of the statute includes no 'receipt of benefit' requirement. The statute focuses on the character of the debt, not the culpability of the debtor or whether the debtor benefitted from the fraud. . . . *Cohen* indicates that whether the debt arises from fraud is the only consideration material to nondischargeability."); *Kendrick v. Pleasants (In re Pleasants)*, 219 F.3d 372, 375 (4th Cir. 2000) (excepting from debtor's discharge under § 523(a)(2)(A) a creditor's claim that included only amounts paid to third parties).

The facts of the last cited case are particularly relevant to the case here.  The debtor in *In re Pleasants* argued that §523(a)(2)(A)'s "obtained by" language requires that some portion of a creditor's claim must have been for monies or services directly transferred from the creditor to the debtor.  *In re Pleasants*, 219 F.3d at 375.  In that case, the plaintiff's claim was only for

consequential damages that it had to pay to third parties because of the debtor's fraud.  The court concluded that the debtor's argument was misplaced, and that the language of *Cohen* is "broad enough to encompass a situation in which no portion of a creditor's claims was literally transferred to the fraudulent debtor."  *Id.*  The court noted that if it were otherwise, the Bankruptcy Code's objectives "would be ill served" and it was "unlikely that Congress would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud."  *Id.* (quoting *Cohen v. De La Cruz*, 523 U.S. at 222 and 223).

Here, there were no express allegations in the district court complaint that Leonard personally obtained money from RDLG.  However, it is undisputed that RDLG paid $40,000 to RPM, an entity in which Leonard held a majority interest.  The fact that RPM may have expended these funds on RDLG's behalf or did not earn a profit does not obviate the fraud.  *See McCoun v. Rea (In re Rea)*, 245 B.R. 77, 87 (Bankr. N.D. Tex. 2000) (holding that it was not necessary that the debtor benefit or profit from the fraud, that the "opportunity to profit" was sufficient for purposes of § 523(a)(2)(A)).

Leonard also argues that the allegations of fraud in the district court complaint are insufficient to establish nondischargeability because fraud was not pled in that action with particularity.  As with respect to Leonard's denial of personal benefit, the argument regarding particularity is irrelevant for purposes of applying collateral estoppel in this proceeding.  Regardless of whether fraud was sufficiently pled, the district court entered a judgment against Leonard for fraud.  It is not the task of this court to go behind that judgment to determine whether it should or should not have been entered.  This court does not act as an appellate court weighing the sufficiency of the judgment.  It is sufficient for purposes of this dischargeability action that there has been a determination of fraud by Leonard under North Carolina law and that the elements of that claim are identical to the requirements for nondischargeability under § 523(a)(2)(A).  Accordingly, the first element for the application of collateral estoppel has been met.

The second requirement for collateral estoppel to apply is that the fraud issue was actually litigated in the prior action.  Here, liability was imposed through the entry of default judgment as a sanction rather than after a trial.  In *Sartin v. Macik*, 535 F.3d at 286, the Fourth Circuit Court of

22

Appeals concluded that North Carolina would not give collateral estoppel effect to a state court default judgment entered as a penalty for a party's failure to comply with a discovery order. *Id.* In contrast, under federal common law, a default judgment entered as a sanction has been given collateral estoppel effect where the sanctioned party substantially participated in the litigation. *See Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 215 (3d Cir. 1997); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1325 (11th Cir. 1995); *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368-69 (9th Cir. 1995); *Cornwell v. Loesch (In re Cornwell)*, 109 F. App'x 682, 684 (5th Cir. 2004); *Herbstein v. Bruetman*, 266 B.R. 676, 685 (N.D. Ill. 2001), *aff'd*, 32 F. App'x 158 (7th Cir. 2002); *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 478 (B.A.P. 10th Cir. 1999), *aff'd*, 216 F.3d. 1087 (10th Cir. 2000); *Int'l Strategies Grp., Ltd. v. Pomeroy (In re Pomeroy)*, 353 B.R. 371, 377 (Bankr. D. Mass. 2006); *Ronk v. Maresh (In re Maresh)*, 277 B.R. 339, 346 (Bankr. N.D. Ohio 2001); *cf. Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 321 (6th Cir. 1997) ("[I]t is already accepted by our Court that, when the defendant in the state court suit has defended the suit, at least in part, collateral estoppel will apply."). *But see Fed. Ins. Co. v. Gilson (In re Gilson)*, 250 B.R. 226, 230 (Bankr. E.D. Va. 2000) (concluding that the actually litigated element of collateral estoppel was not established for purposes of nondischargeability following entry of a default judgment sanction by a non-bankruptcy court).

As previously mentioned, the Supreme Court stated in *Semtek International* that federal reference to a state law's collateral estoppel law should not occur when state law is incompatible with federal interests, with the Court specifically citing as a federal interest the preclusive effect of a federal court's dismissal for willful violation of discovery orders. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. at 509. The Court noted that the "federal courts' interest in the integrity of their own processes might justify a contrary federal rule." *Id.* In light of the specificity of this noted exception, and the fact that the district court in this case expressly sanctioned Leonard to uphold the integrity of the court and the judicial process, this court must conclude that federal interests require application of the federal interpretation of "actually litigated." Thus, the fraud issues was actually litigated for collateral estoppel purposes if Leonard substantially participated in the district court litigation prior to the entry of the default judgment.

In this regard, the record of the district court action demonstrates that Leonard was actively engaged in the case over the course of two years. Leonard and RPM were represented by five different attorneys, three of whom successfully withdrew during the course of the litigation. Leonard filed an answer and an amended answer, in which he largely denied RDLG's allegations and raised numerous affirmative defenses. Leonard and the other defendants successfully defended against RDLG's pre-judgment attachment motion. The litigation proceeded through discovery, including the filing of and response to the first set of interrogatories and requests for production of documents. On January 23, 2012, a mediated settlement conference was conducted. After mediation, discovery continued, including further service of requests for production and three separate notices of deposition on Leonard. The parties consented to the jurisdiction of a United States Magistrate Judge; a trial was scheduled and a pre-trial conference, at which Leonard personally appeared, was held. Also, in conjunction with the other defendants, Leonard submitted a trial brief and jury instructions.

Based this record, it is evident that Leonard's participation in that action was substantial prior to entry of the default judgment. In fact, his involvement was as extensive as or greater than the involvement of similarly situated litigants in cases where other federal courts have concluded that a default judgment met the actually litigated requirement because of the party's substantial involvement. In *Docteroff*, for example, the sanctioned party had "filed an answer, noticed [litigant's] deposition, engaged several lawyers, including local counsel, filed papers with the court, and corresponded with opposing counsel." *In re Docteroff*, 133 F.3d at 215. Similarly, in *Bush*, the sanctioned party "actively participated in the adversary process for almost a year[,] . . . was represented by counsel[,] . . . answered the complaint[,] . . . filed a counterclaim[,] . . . filed discovery requests[,] . . . [a]fter undertaking to represent himself, he began to refuse to cooperate in discovery. . . . [and] [a]t the district court's properly noticed pre-trial conference, [he] failed to appear." *In re Bush*, 62 F.3d at 1324; *see also Herbstein v. Bruetman*, 266 B.R. at 685 (describing extensive involvement of party subject to default judgment); *Monica v. Simpson (In re Simpson)*, 229 B.R. 419, 424 (Bankr. W.D. Tenn. 1999) (same). Given Leonard's substantial involvement in the district court proceeding, this court concludes that the actually litigated requirement of collateral estoppel is satisfied in this case.

24

The third component of collateral estoppel requires that the litigated issues subject to preclusion be "necessary and essential to a judgment on the merits in the prior litigation." *Santana-Albarran v. Ashcroft*, 393 F.3d at 704; *see also Urquhart v. E. Carolina Sch. of Med.*, 712 S.E.2d at 204. Stated differently, collateral estoppel or "[i]ssue preclusion attaches only to determinations that were necessary to support the judgment entered in the first action." 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4421 (2d ed. 2013). In striking the defendants' answer and entering default judgment on all of RDLG's state law claims, the district court found Leonard liable for the fraudulent misrepresentation claim. The issues necessary to establish the fraudulent misrepresentation cause of action are also necessary for purposes of entering default judgment, thus satisfying this collateral estoppel element.

The fourth collateral estoppel requirement is that the party to be estopped was a party or in privity with a party to the prior litigation. *Santana-Albarran v. Ashcroft*, 393 F.3d at 704. This element is readily satisfied as the parties are the same, as Leonard acknowledges.

The fifth and final element of collateral estoppel is that the party to be estopped had a full and fair opportunity to litigate the issue. *Id.* Leonard argues that this element is absent here because he was not given notice of the October 11 show cause hearing, and was not represented at the hearing. Leonard also states that he believed that the district court action was stayed because of his bankruptcy filing the day prior to the show cause hearing.

The Supreme Court has explained that "what a full and fair opportunity to litigate entails is the procedural requirements of due process." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 483 n.24, 102 S. Ct. 1883 (1982). A "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.'" *Id.* at 481. No one set of facts or circumstances is determinative. "In the end, [the] decision will necessarily rest on the trial court's sense of justice and equity." *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 334, 91 S. Ct. 1434 (1971). This discretion is tempered by the observation that "a refusal to give the first judgment preclusive effect should not occur without a compelling showing of unfairness, nor should it be based simply on a conclusion that the first determination was patently erroneous." Restatement (Second) of Judgments § 28 cmt. j (1982).

25

In this court's view, this factor is the most difficult collateral estoppel issue. Although the show cause hearing scheduled by the court pertained only to Leonard's counsel, the court apparently addressed Leonard's conduct at the hearing. Moreover, it was not unreasonable as a general matter for Leonard to conclude that the automatic stay protected him from further proceedings in the district court. On the other hand, the district court had been clear that he was losing patience with Leonard, and that his failure to comply with the court's orders could result in sanctions against him. The September 6, 2012 order setting the pretrial conference expressly warned that the failure to comply with the court's directives regarding preparation for that conference could result in the imposition of sanctions. Similarly, the October 1, 2012 order denying the motion to continue the pretrial conference warned about the potential for a contempt finding if the court's order was disobeyed. Then, the October 5, 2012 order imposing sanctions, in part on a *sua sponte* consideration of the issue, specifically warned Leonard that the failure to timely comply with the payment of the ordered sanctions "will result in the Court striking the answer of Defendants and entering default judgment against Defendants and/or the instigation of contempt proceedings against counsel." Thus, Leonard was placed on notice by the court, in no uncertain language, that the court expected prompt compliance with its orders. In light of the court's strong language and unqualified directive, Leonard should not have summarily concluded that he was automatically protected by the bankruptcy filing, especially in light of the Sixth Circuit's decision in *Dominic's Restaurant* that contempt proceedings are not stayed by a bankruptcy filing and the numerous decisions concluding that proceedings imposing sanctions for violation of the federal rules are not stayed. And, to the extent that Leonard concludes that the district court erred in entering the default judgment he has a right of appeal that he may still exercise. *See Pram Nguyen ex rel United States v. City of Cleveland*, 534 Fed. Appx 445 (6th Cir. 2013) (noting that the absence of appellate review is a factor to consider in adjudging whether the party had a "full and fair opportunity to litigate"). Accordingly, after careful consideration of the precise facts in this case, the court concludes that for collateral estoppel purposes Leonard had a full and fair opportunity to litigate.[9]

---

[9] As an aside, the court notes that Leonard's Schedule B indicates that he had $2,500 on hand as of the date of the bankruptcy filing, the precise sum needed to pay the monetary sanction assessed against him.

Based on the foregoing, the court concludes that all of the elements necessary for the application of collateral estoppel have been met.  But before leaving the subject, a brief discussion regarding the finality of the district court judgment is necessary.  As previously noted, the district court entered default judgment as to Leonard's liability, but stayed any determination regarding damages pending resolution of his bankruptcy case.  As a result, the judgment entered against Leonard was not final in the sense that it could be appealed.  *See Kovacic v. Cuyahoga Cnty. Dept. of Children & Family Servs.*, 724 F.3d 687, 693 (6th Cir. 2013) (noting that judgments "where assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291").  The right to appeal, however, is not determinative in the context of collateral estoppel.  *See Siemer v. Nangle (In re Nangle)*, 274 F.3d 481, 485 (8th Cir. 2001) (noting that while a judgment may not be subject to appeal, that alone is insufficient to deny the judgment's preclusive effect); *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961) ("Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review.").  Finality for purposes of collateral estoppel is a relatively relaxed concept and "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982).  Therefore, "[i]n particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment."  *Id.* § 13 cmt. g.; 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4434 (2d ed. 2013) ("Recent decisions have relaxed traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief.").

The Sixth Circuit Court of Appeals has recognized this more relaxed approach and has applied collateral estoppel in situations where final judgment has not been entered.  *Birgel v. Bd. of Comm'rs of Butler Cnty., Ohio*, 125 F.3d 948, 951 (6th Cir. 1997).  Specifically, in *Birgel*, collateral estoppel was applied in the context of a motion to dismiss that was granted by a state court, but

27

which also provided plaintiff time to file an amended complaint. *Id.* at 951. Rather than file an amended complaint, the plaintiff initiated an identical action in federal court. *Id.* Relying on prior precedent, the Sixth Circuit held that when a state court "issued an opinion with detailed findings of fact and conclusions of law based on pretrial affidavits, depositions, and trial briefs that decision is 'sufficiently firm to be accorded conclusive effect.'" *Id.* at 951-52 (quoting *Employees Own Fed. Credit Union v. City of Defiance, Ohio*, 752 F.2d 243, 245 (6th Cir. 1985)). In this instance, the district court similarly engaged in extensive, detailed analysis in entering the default judgment against Leonard. Therefore, the absence of a final judgment in the traditional sense of the word does not preclude the doctrine of collateral estoppel.

The court having found that all of the elements of collateral estoppel have been met in this case, entry of the default judgment by the district court on RDLG's fraudulent misrepresentation claim collaterally estops Leonard from relitigating the fraud issue in this court. RDLG's judgment on its fraudulent misrepresentation claim against Leonard is excepted from his discharge under § 523(a)(2)(A).

## V.

The court turns next to Leonard's motion for summary judgment. According to Leonard, he is entitled to summary judgment as a matter of law because the undisputed material facts in this case do not support RDLG's nondischargeability claims under 11 U.S.C. § 523(a)(2)(A), (4), and (6). In light of this court's previous conclusions regarding the collateral estoppel effect of the fraud judgment against him, Leonard's argument regarding the sufficiency of RDLG's § 523(a)(2)(A) claim must be summarily rejected.

As to § 523(a)(4) , this provision excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Regarding the fiduciary component of § 523(a)(4), the Sixth Circuit has instructed that in order to be "acting in a fiduciary capacity" within the meaning of this statute, the following must be established by a preponderance of the evidence: "(1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci*

*(In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (quoting *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005)).    Moreover, the court employs a narrow interpretation of the term "fiduciary," limiting it to "an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir.1997); *see also In re Blaszak*, 397 F.3d. at 391 (§ 523(a)(4) does not apply to constructive trusts that courts may impose as an equitable remedy).    What constitutes an express or technical trust is generally governed by state law.    *Rowland v. Walls (In re Walls)*, 375 B.R. 399, 405 (Bankr. S.D. Ohio 2007) (citations omitted).

In the present case, there is no allegation in the complaint of an express or technical trust. RDLG merely asserts the existence of a business relationship between RDLG and RPM that was predicated on RPM marketing and selling lots within the Property and RDLG providing compensation for those services.    In response to Leonard's summary judgment motion on this issue, RDLG admits the absence of a trust but argues that Leonard as a real estate broker owed a fiduciary duty to RDLG under state law.    Regardless of the truth of this assertion, it is irrelevant. It is well established that a state-law fiduciary relationship alone is insufficient to establish the trust requirement of § 523(a)(4).    *See Hopper v. Honkanen (In re Honkanen)*, 446 B.R. 373, 381 (B.A.P. 9th Cir. 2011) ("[A] California real estate licensee does not meet the fiduciary capacity requirement of § 523(a)(4) solely based on his or her status as a real estate licensee. General fiduciary obligations are not sufficient to fulfill the fiduciary capacity requirement in the absence of a statutory, express, or technical trust."); *Shappy v. Scott (In re Scott)*, 201 B.R. 424, 435 (Bankr. E.D. Va. 1996) (fiduciary relationship under Virginia law between real estate broker and client did not give rise to an express or technical trust for purposes of § 523(a)(4)).    Accordingly, Leonard is entitled to summary judgment on RDLG's claim under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity.

As to the remaining aspects of § 523(a)(4), larceny and embezzlement, it has been noted that larceny under this provision is the "felonious taking of another's personal property with intent to convert it or deprive the owner of same."    4 *Collier on Bankruptcy* ¶ 523.10[2] (16th ed. 2012) (quoting *Smith v. Williams (In re Smith)*, 253 F.3d 703, 2001 WL 498662, *2 (5th Cir. 2001) (table

opin.); *see also Davis v. Kindrick (In re Kindrick)*, 213 B.R. 504, 509 (Bankr. N.D. Ohio 1997) ("Larceny can be defined as the actual or constructive taking away of property of another without the consent and against the will of the owner or possessor with the intent to convert the property to the use of someone other than the owner."). Similarly, embezzlement under § 523(a)(4) is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Brady*, 101 F.3d at 1172–73 (quoting *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr. M.D. Tenn.1982)). Both larceny and embezzlement under § 523(a)(4) require an element of fraudulent intent. *Hernandez v. Dorado (In re Dorado)*, 400 B.R. 304, 309 (Bankr. D. N.M. 2008). The critical distinction between the two is that with regard to an embezzlement the original taking of the property was lawful or with the consent of the owner, while with larceny the felonious intent existed at the time of the taking. 4 *Collier on Bankruptcy* ¶ 523.10[2]. The intent required under this provision is "fraud in fact, involving moral turpitude or intentional wrong." *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007) (citing *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir.1986)). It may be established by circumstances demonstrating an intent to permanently deprive another of his property. *Id.* at 117 (citing *Fischer Investment Capital, Inc. v. Cohen (In re Cohen)*, 334 B.R. 392, 400 n.7 (Bankr. N.D. Ill.2005)).

In its complaint, RDLG alleges generally that its claims against Leonard arise from embezzlement or larceny, but it makes no specific allegations that would establish either claim. There is no assertion that Leonard feloniously took property from RDLG or that Leonard embezzled property entrusted to him by RDLG. In apparent recognition of these fatal deficiencies, RDLG's brief in opposition to Leonard's summary judgment motion does not even address the embezzlement and larceny claims. Accordingly, Leonard's motion for summary judgment as to all of RDLG's § 523(a)(4) claims will be granted.

Lastly, the court turns to Leonard's summary judgment argument regarding nondischargeability pursuant to § 523(a)(6). Under this provision, a debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. 11 U.S.C. § 523(a)(6). As stated by the Sixth Circuit, "the judgment must be

for an injury that is both willful and malicious.  The absence of one creates a dischargeable debt." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir.1999).  With respect to"willfulness" for purposes of § 523(a)(6), "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."  *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 118 S. Ct. 974 (1998). "[U]nless 'the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *In re Markowitz*, 190 F.3d at 464 (citations omitted).

In contrast, " '[m]alicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citations omitted).  Stated differently, "[t]here must also be a consciousness of wrongdoing. . . . It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious under § 523(a)(6)." *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001) (citations omitted).  A party may establish malice for purposes of § 523(a)(6) by showing "that (1) the debtor has committed a wrongful act, (2) the debtor undertook the act intentionally, (3) the act necessarily causes injury, and (4) there is no just cause or excuse for the action." *JP Morgan Chase Bank, NA v. Algire (In re Algire)*, 430 B.R. 817, 823 (Bankr. S.D. Ohio 2010) (citing *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1228 (6th Cir.1991); *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202 (9th Cir. 2001)).

Leonard asserts that he is entitled to summary judgment as a matter of law on RDLG's § 523(a)(6) claim because there is no allegation in the complaint that he intended to injure RDLG. Leonard also argues that the only way that he and RPM could earn commissions and recoup expenses was by making the Sale Event successful.  Thus, he could not have intended to injure RDLG because in turn he would have been injuring himself and RPM.

In response, RDLG asserts that the misrepresentation by Leonard that induced RDLG to enter into the marketing agreement was the statement that the Property would sell for an average lot price of $72,500, when in fact Leonard knew that the Sale Event would only produce an average lot sale price of approximately $30,000 to $40,000.  RDLG argues that at the lower sale price Leonard

and RPM could still recoup its expenses and earn commissions, while the Sale Event would be profitable for RDLG only if the higher prices were achieved.  According to RDLG, these facts satisfy the willfulness requirement of § 523(a)(6) and lead to the inference that Leonard had no just cause or excuse for his actions.

As to the argument that the complaint does not expressly allege intent to injure, the court notes that while this may be true, there are numerous allegations in the complaint of intent to deceive and defraud.  It has been recognized that "[a] debtor who obtains money through false statements intended to deceive by definition intends the financial injury that he causes." *Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 964 (7th Cir. 2004).  So Leonard's argument regarding the absence of an intent to injure allegation must be rejected.  Regarding the parties' alternative arguments of whether the issues of willfulness and maliciousness remain disputed, the court upon examination of the entire record concludes that genuine issues of material fact remain that preclude summary judgment.  Leonard's motion for summary judgment on RDLG's § 523(a)(6) must be denied.[10]

## VI.

An order will be entered in accordance with the foregoing granting RDLG's motion for partial summary judgment as to the § 523(a)(2)(A) claim, granting Leonard's summary judgment motion as to RDLG's § 523(a)(4) claim, and denying Leonard's motion for summary judgment as to RDLG's § 523(a)(2)(A) and (a)(6) claims.

# # #

---

[10] The court notes that the only debt alleged in the complaint to be nondischargeable under § 523(a)(6) is RDLG's fraud claim.  Because the court has concluded that RDLG's fraud judgment is excepted from discharge under § 523(a)(2)(A), resolution of the question of whether this same debt is excepted from discharge under § 523(a)(6) appears to be unnecessary.